**UNITED STATES of America, Plaintiff,**

v.

**52.67 ACRES OF LAND, MORE OR LESS, IN ST. CLAIR COUNTY, State of ILLINOIS, and Russell H. Classen et al., and Unknown Owners, Defendants.**

**Civ. A. No. 3560.**

United States District Court
E. D. Illinois.

April 11, 1957.

348

C. M. Raemer, U. S. Atty., Jack C. Morris, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff.

Russell H. Classen, Belleville, Ill., for defendant.

JUERGENS, District Judge.

The United States, at the request of the Secretary of the Air Force, filed an action, civil in nature, for the taking of property under power of eminent domain and for the ascertainment of award of just compensation to the owners and parties in interest of the real estate described in the complaint.

The defendants filed their answer denying the material allegations of the complaint. They also filed their cross-complaint consisting of two counts. In Count I the defendants allege that the land sought to be taken has become best suited for the purpose for which it is now being used, namely, that of a Radar Station of the United States Air Force, and they ask that just damages be awarded to compensate them for the cost of building a serviceable road and drainage ditches including culverts over certain lands therein described and, secondly, that damages be awarded to them to compensate them for the damages they will sustain by the curtailing of farming operations on the two tracts which have been necessarily separated because of the taking by the government of the land described in the complaint.

In Count II the defendants pray just compensation on account of the taking of the improvements now existing on the land placed there by the United States and that were in existence on the land on the date that the United States did make their declaration of taking and give notice of condemnation of the land described.

The United States filed its motion to strike from the answer and cross-complaint of the defendant landowners "the following portions of said answer for the reasons stated." The government has not set up any portions of the answer which it thought should be stricken but did set up certain portions of the cross-complaint which it moved to strike. Therefore, the Court is assuming that the motion to strike is directed solely against the counter-complaint. The United States has moved to strike from the counter-claim the first paragraph on Page 3 of the cross-complaint for the reason that said paragraph is immaterial in that it is an erroneous assumption as to what is the law and that it is a pleading of evidence.

The motion also asks that Paragraphs 2 and 4 of Count II of said cross-complaint be stricken for the reason that they are immaterial in that they raise erroneous issues of law and are a pleading of evidence.

The parties in their oral argument before the Court have indicated their desire for the Court to rule as to what evidence will be admissible on the question of the "highest and best use" for which the premises are adaptable in order to fix just compensation for the land taken.

To properly decide the issues raised by the government's motion to strike, it is necessary to consider paragraph numbered 5 of the lease which was entered into between the parties to this condemnation suit on July 23, 1949, wherein the government leased for military purposes the real estate described in said lease for a term beginning August 1, 1949, through June 30, 1950, and from year to year thereafter without further notice except as set forth in said lease which is not material for the issues herein involved. It also provided that in no event should the lease extend beyond June 30, 1964. Paragraph numbered 5 of the lease provides as follows:

"The government shall have the right, during the existence of this lease, to attach fixtures, and erect structures or signs, in or upon the premises hereby leased, which fixtures and structures, or signs, so placed in, upon, or attached to said premises shall be and remain the property of the government and may be removed or otherwise disposed of by the government."

The defendants, in their cross-complaint, ask compensation for the improvements so placed upon said land during the existence of the lease, which improvements were to be and remain the property of the government and which could be removed or otherwise disposed of by the government.

In 6 A.L.R.2d 323, it is stated as follows:

"While there are differences of opinion as to the precise meaning of the term 'fixture' it is generally used in reference to some originally personal chattel which has been actually or constructively affixed either to the soil itself or to some structure legally a part of the soil. It implies something having possible existence apart from realty, but which may by annexation be assimilated into realty * * * and as chattel property brought in and upon and annexed to real property, but which, while retaining its separate identity, becomes realty, and may under such circumstances become personalty again."

In 36 C.J.S., Fixtures, § 1, p. 889, the following appears:

"The term 'fixture' is applied to articles of the nature of personal property which have been affixed to land and which retain their separate identity."

In 83 C.J.S., Structure, p. 549, we read:

"The word 'structure' usually refers to a permanent stationary erection, and ordinarily carries with it the idea of size, weight, and strength" and that it "may be below the surface of the ground as well as above it, and it may be a part of another larger structure, and in reference to it constitute but a part of a structure."

■ The general common-law rule that whatever is once affixed to the freehold becomes a part of it and cannot afterwards be removed by a tenant, was subject to exception in the case of building and other fixtures placed on the premises for the purpose of trade or manufacture and not intended to irrevocably become a part of the realty. In determining whether an object remains personalty or becomes a part of the realty, the courts of the United States have almost universally accepted the so-called intention test.

■ The intention of the government as to the disposition of the fixtures, structures, and signs placed upon the leased premises has been clearly shown by the provisions of Paragraph 5 of the lease above set forth. There never was any intention on the part of the government, which intention was unquestionably known to the lessors, to relinquish its rights to the fixtures and structures it placed on the premises nor that the same should inure to the benefit of the lessors as one of the incidents of the lease or as any "fruit of the lease."

■ Under the 5th Amendment to the Constitution of the United States the landowners are entitled to receive just compensation for land taken. Just compensation would be the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future in the market place by the willing buyer and the willing seller, while the property is privately held. In order to reach a fair conclusion in this respect, the jury should be informed by competent witnesses whether the public generally are interested in purchasing property for the construction and operation of radar installations and whether there is a market for such radar installations. The Supreme Court in Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, stated that the elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value, a thing to be condemned in business transactions as well as in judicial ascertainment of truth. In other words, is the property valuable in the open market for the use as a radar station and would private interests or the public generally as distinguished from governmental uses

and purposes, be interested in the construction and operation of a radar station and would the property be in demand by any private interest or the public generally for the installation and operation of a radar station, and under such circumstances would there be a willing buyer and a willing seller so as to come within the rules as above set forth. There must be a probability and not merely a possibility.

The United States by Paragraph 5 of the lease, having reserved unto itself the property right in the fixtures and structures placed upon the premises with the further right to remove or otherwise dispose of same, never intended that the fixtures and structures attached to the real estate should ever become a part of the land or belong to the lessors and cannot, under any stretch of the imagination, be considered as being "fruits of the lease." United States v. Five Parcels of Land, 5 Cir., 180 F.2d 75. United States v. Land in Dry Bed of Rosamond Lake, California, D.C., 143 F.Supp. 314.

On the other hand, the grading, leveling, altering, and changing of the surface of the above described real estate could and should be considered as "fruits of the lease" and as becoming a part of the real estate and inuring to the benefit of the lessors. The landowners had the right at the termination of the lease to receive the land back with the structures and facilities removed, but the grading, leveling, altering, and changing the surface of the terrain were not removable fixtures or structures within the contemplation and meaning of the provisions of the lease allowing removal or other disposition thereof by the government at the termination of the lease and would be considered as being "fruits of the lease." United States v. Five Parcels of Land, supra.

Consequently, the government's motion to strike those portions of Counts 1 and 2 of the defendant's counter-claim wherein the defendants claim and demand compensation for the fixtures, structures and signs placed upon the real estate described in the complaint but not including the grading, leveling, altering and changing the surface of the real estate will be and the same is hereby allowed and the same will be stricken.

The defendants have also filed their motion requesting that an order be entered ordering the United States of America or its agencies, such as the United States Army Corps of Engineers, or the United States Air Force, to produce and permit the inspection and copying or photographing by or on behalf of the moving parties of all plans, specifications, contracts, and any and all records that these agencies of the United States Government may have in their possession which dealt with, or pertained to the improving of the premises in question after the United States Government, through its agencies, took over possession under said lease in question and that the Court further order that the landowners herein and their agents be permitted to enter upon the premises herein involved for the purpose of inspecting, measuring, surveying, and photographing the improvements made since said premises were leased to the United States Government.

The above motion of the defendants will be denied. The defendants in the pre-trial stipulations agreed that they would furnish to the plaintiff the names of defendants' expert witnesses for the purpose of going on the land for appraisement purposes and plaintiff agreed to secure permission for the defendants' experts to go on the land within one week after the names had been received. It is the suggestion of this Court that the above provisions of the pre-trial stipulations be carried out.

It is so ordered.