HAROLD E. MARTIN and
AMY Q. MARTIN, Plaintiffs

v.

WOLFGANG DOMAIN, Defendant

Civil No. 6-1968

Municipal Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

April 4, 1968

WILLIAM BAILEY (BAILEY & WOOD), St. Thomas, Virgin Islands, *for plaintiffs*

JOHN MARSH, Christiansted, St. Croix, Virgin Islands, *for defendant*

JOSEPH, *Judge*

## OPINION AND ORDER

Harold E. Martin and Amy Q. Martin, his wife, plaintiffs herein, and Wolfgang Domain, defendant, are neighbors living at Estate Cane Bay, St. Croix, on adjoining pieces of property which they own. On April 4, 1963, the parties entered into an agreement whereby plaintiffs leased to defendant a portion of their land which adjoined his for a term of fifteen years commencing on April 1, 1963, and ending on the same date in 1978. As consideration for the lease defendant agreed to pay an annual rental of $1.00 and to clear the leased land of all small trees and brush. In addition to certain restrictions in the lease not here in issue, it was agreed that defendant would keep the land in a neat and orderly condition, would use it only for the growing of horticultural products, and that no structures of any kind would be built upon it.

Plaintiffs have filed suit herein for possession of the leased property. In their complaint they allege that defendant has failed to meet the conditions of the lease in that he has failed to pay the annual rent for the years 1965, 1966 and 1967, that he has erected fences and animals huts, that he has harbored goats and horses and that he has not kept

the land in a neat and orderly condition. By amendment made at the conclusion of defendant's testimony plaintiff further alleged that defendant's driveway turn-around and a portion of a cistern installed at defendant's gardener's cottage encroached on the leased property in further violation of the lease. By answer defendant denies the failure to pay rent for the years in question but states that the rent was paid by the credit of money owed him by plaintiffs for the purchase of certain ornamental plants. He denied that he had failed to keep the land in a neat and orderly condition, that he had erected structures there and that he had used the land for other than horticultural purposes.

From the testimony of the parties and witnesses on their behalf it appears that at the time of execution of the lease the land was unimproved jungle in a low area which was subject to flooding. The motivating factors for the lease were that plaintiffs wanted the land cleared and cultivated without cost to themselves and defendant wanted the use of the land for growing horticultural products which was his hobby. As agreed, immediately upon the execution of the lease plaintiff commenced clearing the land, using bulldozers in the clearing operations. When the land was cleared he undertook the planting and growing of trees, ornamental plants and vegetables.

For a period of time prior to March, 1966, defendant kept a few horses and goats on the leased property. These animals were generally tethered on the property he owned adjacent to the leased property but were at times kept penned in small chicken wire enclosures he had made on the leased property. Defendant also ran a water pipeline and an electric wire across the property from his gardener's cottage to a well he had dug pursuant to an easement which he had obtained prior to the execution of the lease. The water from this well was used to water the plants and vegetables grown on the land. The electric wire was used to

supply current to the pump for the well. After filing this suit plaintiffs caused a survey to be made of the leased property which disclosed that a portion of the cistern which defendant installed for his gardener's house was on the leased land as was a part of his driveway turn-around.

It does not appear to the court that defendant has breached any of the terms and conditions of the lease. Disposing of plaintiffs' contentions in order, the court finds that defendant paid the rent for the years 1965, 1966 and 1967 by a credit for produce which he supplied them. Plaintiff, Mrs. Martin, testified that she asked him for some papayas which he offered to give her. She states that she insisted on paying for them and gave him a check which he did not cash. This testimony supports defendant's allegation in his answer that the rent was paid by a credit given for ornamental plants. In any event, however, the matter is not controlling, as defendant has paid the sum of $13 into court. Section 292 of Title 28 of the Virgin Islands Code provides that "If at any time before judgment in such action the lessee or his successor in interest . . . pays to the plaintiff or brings into court the amount of rent then in arrears, with interest, and the costs of the action, and performs the other covenants or agreements on the part of the lessee, he shall be entitled to continue in the possession according to the terms of the lease." The sum of $13 is more than sufficient to pay the rent in arrears, interest and costs.

It is the opinion of the court that the chicken wire enclosures used as animal pens were not structures within the prohibitions of the lease. They were made of saplings inserted in the ground and chicken wire, and were easily removable. Defendant had these pens removed after being served with the complaint, and testified that he would have done so earlier if he had known that they were objectionable to plaintiffs. "The word 'structure' usually refers to

603

a permanent stationary erection, and ordinarily carries with it the idea of size, weight and strength," 83 C.J.S., Structure, p. 549, United States v. 52.67 Acres of Land, Etc., 150 F.Supp. 347, 350, "and has come to mean anything composed of parts capable of resisting heavy weights or strains," 83 C.J.S. p. 548. As was said by the court in Baltimore Butchers Abattoir & L.S. Co. v. Union R. Co., Md., 17 A.2d 130, 133:

"It is also a fundamental rule that, since restrictions are in derogation of conveyances and repugnant to trade and commerce, restrictive covenants are not favored by the courts, but should be strictly construed against the parties seeking to enforce them. A restrictive covenant should not be extended by implication beyond its original intent to include anything not clearly expressed in the conveyance, and if there is ambiguity in its meaning, any doubt should be resolved in favor of the unrestricted use of the property, if it reasonably can be done. The burden rests upon the party relying on a restrictive covenant to bring himself within its terms."

In answer to the allegation that the keeping of animals constituted a non-horticultural use of the land, it can only be said that the forfeiture of a lease will not be declared for matters which are not substantial or are of a trifling character. Kaplan v. Flynn, Mass., 150 N.E. 872, 46 A.L.R. 6. There the court stated:

"Equity relieves against a forfeiture where no real fault is committed, or the breach is induced or waived by conduct, as well as when by action or mistake there has been a breach of some collateral covenant, such as to repair or insure, and where the lessor may be placed in the same position as if the breach did not occur by an award of damages or otherwise."

See also Baltimore Butchers Abattoir & L.S. Co., supra, p. 134.

The animal pens were only 11 by 14 and 7 by 10 feet, respectively. They were located on the property line farthest from the land occupied by plaintiffs, and so far as it ap-

pears; they were out of their view. There is no evidence that there was anything substantial or permanent about them.

■ For the same reasons the court finds that neither the pipeline nor the electric wire were "structures" and that their use and the use of a small portion of the property for a turn-around for the driveway on defendant's adjoining property was not opposed to the use of the land for horticultural purposes. Certainly it could not be contended that defendant did not have the right under the lease to build a roadway or driveway into the property for access to his crops. If, instead he used the driveway on his property and the turn-around as access to it, should a different result follow? The court thinks not.

■ The court finds from the evidence that defendant did not breach his covenant to maintain the property in a neat and orderly condition. The stones and stumps and cans which plaintiffs now complain of were the result of the horticultural operations and the clearing for them. Both parties testified that, as contemplated, defendant used tin cans for starting his plants. There is no testimony other than that of plaintiffs that the property was unsightly or disorderly, and there is ample evidence to the contrary.

The placing of a part of the cistern on plaintiffs' property was obviously a mistake, as even plaintiffs did not know that there was any encroachment by the cistern on the leased land until this fact was disclosed by a survey they had made for the purposes of this case. Plaintiffs are in a poor position to complain of the presence of a part of the cistern on the leased premises during the term of the lease, they having acknowledged that they have partially ousted defendant of possession by building a gardener's cottage, a portion of which is on land leased to defendant and to other acts inconsistent with their covenant of quiet enjoyment in him. Futhermore, by drilling or digging a well on the leased property causing defendant's well to go

605

dry, plaintiffs have deprived him of water for his horticultural operations and have thus restricted his use of the property for the intended purposes.

■ All of the complaints of plaintiffs are of a trifling and insubstantial nature. There have been no animals on the property for approximately three years and the pens have been removed. No complaint as to the condition of the premises has been made for at least two years, if ever, as the parties have had no conversations since April, 1966. Plaintiff, Harold E. Martin, testified to a "friendly meeting" of the parties "over a drink" at his house at which the planting of screening banana trees was discussed, and presumably, also the use of defendant's driveway for a building project of plaintiff's. On cross-examination Mr. Martin described this meeting as occurring in April, 1966. Mrs. Martin also told of friendly discussions with defendant at that time and both plaintiffs agree that they have not had any discussions or conversations since then. The court therefore concludes that even if defendant had been guilty of minor breaches of the lease, these breaches have been waived by plaintiffs' failure to give defendant notice and an opportunity to correct them.

At the request of the parties the court has viewed the leased property and has seen nothing to change the views as above expressed.

It is unnecessary to decide the question raised by defendant as to whether notice required to be given pursuant to the provisions of 28 V.I.C. §§ 752 and 789, may be waived by the lease agreement, this action being one for possession and not forcible entry and detainer, and for the additional reason that, upon the basis of the foregoing conclusions there is no present right of possession in plaintiffs.

Plaintiffs' action for possession is hereby dismissed, plaintiffs to pay the costs of the action, including fees for defendant's attorney in the amount of $250.

Defendant, by counterclaim, has alleged that plaintiffs, through their agent or employee, have constructed a pig pen and other structures on the leased property and have entered upon and are occupying it against the will of defendant. He prays for an order requiring plaintiffs to remove themselves from the property. Plaintiffs have admitted that their gardener built a pig pen and kept a pig on the leased property, but have alleged by reply that both pig and pen have been removed. It has also been admitted that this employee's house was built in part on the leased property. It appears, however, that this was also the result of a mistake as to the correct line of the leased portion of plaintiffs' land, and that the damage caused thereby, if any, is inconsequential. The court will therefore deny that part of defendant's counterclaim which is in the nature of a prayer for injunctive relief.