**HALVER MOOLENAAR, Plaintiff**

v.

**CO–BUILD COMPANIES, INC., Defendant**

Civil No. 392-1972

District Court of the Virgin Islands

Div. of St. Croix

February 13, 1973

349

NICHOLS & SILVERLIGHT, ESQS., Christiansted, V.I., *for plaintiff*

GIBBS & SELKE, ESQS., Charlotte Amalie, St. Thomas, V.I., *for defendant*

YOUNG, *Judge*

### MEMORANDUM OPINION AND JUDGMENT

This case involves the proper construction of the renewal clause in a lease. Briefly stated, two issues are presented. First, is a valid and specifically enforceable renewal option created by a clause which leaves the rent for this period to be determined by subsequent agreement between the parties? And secondly, if the clause is valid but the parties are unable to agree on the rent, how is this rental figure to be determined? Here I must decide whether the court must look to fair market value at the

time when the option is exercised, or whether the court may take a lower figure if it is shown that the parties contemplated that the land would be put to less than its most remunerative use. For the reasons given below, I hold that such a renewal clause contains an implicit term that the new rent shall be fixed at its "reasonable" or "fair market" value. The clause is thus specific enough to be valid and enforceable. I further hold that parol evidence is admissible to explain this implicit term, and to show that the parties intended the rent to be set at the fair market value of the land as if it were subject to certain use restrictions.

██ The facts of this case are not in dispute. In October of 1967, plaintiff Moolenaar, a sheep and goat farmer, leased 150 acres of land from one Aurea Correa. His leasehold was to run for a period of five years with an option to renew for an additional five. Moolenaar was to pay $375 per month during the initial term, but the rent for the renewal period "shall be renegotiated."[1] Moolenaar took possession under this lease and expanded his sheep and goat farm onto the demised premises. Before the time came to exercise the renewal option, however, Mrs. Correa sold the land to real estate speculators who in turn sold it to West Indies Enterprises, the predecessor corporation to the defendant Co-Build Companies, Inc. ("Co-Build"). The new owners nonetheless took subject to Moolenaar's rights under the pre-existing and duly recorded lease. At this point I should mention that the testimony disclosed, and I so find, that the representatives of Co-Build negotiating the purchase of the land had actual knowledge of the lease and its renewal clause. They dis-

---

[1] The renewal clause provides in full as follows:
 4. OPTION OF RENEWAL: Provided that Tenant shall not be declared in default at any time during the term hereof, the Tenant shall be entitled to an option to extend the term of this lease for an additional period of FIVE (5) YEARS upon the same terms and conditions except that the rental shall be renegotiated.

cussed its validity or purported lack of validity with their counsel and accepted title insurance with an exception taken by the title insurer to the rights of the tenant in possession, including the lease renewal clause.

In April of 1972, some six months before the first five-year term expired, Moolenaar informed Co-Build of his intention to exercise the renewal option. Co-Build expressed its willingness to extend the lease at a "renegotiated" rent of $17,000 per month. Co-Build justified this figure by the high price it had paid for the land, and by its unquestionably great value if put to industrial use.[2] Such a rent, however, is obviously beyond the resources of the less profitable goat husbandry business. Moolenaar therefore proposed a considerably lower figure and indicated his desire to meet for direct negotiations. All such offers were declined. Upon Co-Build's refusal to recede from its initial position, Moolenaar filed the present action for a declaratory judgment setting out the rights of the parties under the lease.

I

■■ The threshold question is, of course, whether Moolenaar possesses a renewal option at all. A number of jurisdictions would hold that he does not, reasoning that a clause which neglects to stipulate the rent is void for uncertainty and indefiniteness. See, e.g., State v. Blair, 174 S.W.2d 851; R. J. Reynolds Realty Co. v. Logan, 3 S.E. 2d 280 (N.C. 1939); Camichos v. Diana Stores Corp., 25 So.2d 864 (Fla. 1946). The better view, however, would hold that such a clause intends renewal at a "reasonable" rent, and would find that market conditions are ascertain-

---

[2] The land is presently zoned I-2, for light industrial use. It has considerable potential in this role, since it adjoins the Hess and Martin Marietta plants and has been appraised at $2,775,000 as of December 20, 1972. Report of Juan B. Gaztambide & Associates, Defendant's Exhibit B. Moreover, it is included in the parcel of land on which the second oil refinery may be built, and if this plan is implemented the land will automatically be rezoned I-1 for heavy industrial use.

able with sufficient certainty to make the clause specifically enforceable. A number of policy considerations support this result. First, it will probably effectuate the intent of the parties better than would striking out the clause altogether. A document should be construed where possible to give effect to every term, on the theory that the signatories inserted each for a reason and if one party had agreed to the clause only in the secret belief that it would prove unenforceable, he should be discouraged from such paths. Secondly, a renewal option has a more sympathetic claim to enforcement than do most vague contractual terms, since valuable consideration will often have already been paid for it. The option of renewal is one factor inducing the tenant to enter into the lease, or to pay as high a rent as he did during the initial period.[3] To this extent the landlord benefited from the tenant's reliance on the clause,[4] and so the tenant has a stronger claim to receive the reciprocal benefit of the option. See Young v. Nelson, 30 A.L.R. 568, 209 P. 515 (Wash. 1922). Finally, I might take note of the policy of construing ambiguities in lease agreements against the landlord, or, with more theoretical justification but little difference in practical result, against the party responsible for drafting the document. All these considerations were relied upon by the Municipal Court in DeChabert v. Lounsbury, 6 V:I. 591 (Municipal Court 1968), the leading case on the matter in this jurisdiction. Judge Joseph there recognized the validity of such renewal clauses and I reach the same conclusion here.

It then remains to be determined only whether this resolution is within the powers of the Court. In the ab-

---

[3] Contrary to Co-Build's assertion that such a clause may benefit either the landlord or the tenant, depending on market conditions, it benefits only the tenant. He has the choice of whether or not to exercise the option, while the landlord would be in a corresponding position only if he could elect to renew the lease and thereby bind the tenant for rent during the additional period.

[4] In the present case, for example, Moolenaar testified that he would not have signed the lease at as high a rent if it were not for the renewal option.

sence of an applicable statute, the Restatement of Contracts has been designated as positive law in this jurisdiction.[5] Section 32 of the Restatement provides that a contract is valid if it is "so definite in its terms" that the "performances to be rendered by each party are reasonably certain." Under this standard the renewal clause would appear sufficiently definite to be binding. Illustration 7 in the Restatement provides as follows:

A promises B to execute a conveyance in fee or a lease for a year of specified land and B promises A to pay therefor. Although the terms of leases and conveyances vary, the promises are interpreted as providing for documents in the form in common local use, and are sufficiently definite to form contracts.

It should be noted that this illustration refers to the promises of *both* parties and that B has not, unlike his practice in other illustrations, agreed to pay "a specified price." Rather, this example seems to assume that a "reasonable rent" is contemplated and that the local real estate market is well enough developed to permit this figure to be determined with fair accuracy. Illustration 10, relied upon by Co-Build, is distinguishable in that it deals with a contract for personal labor which is less susceptible to market valuation. With the blank in the renewal clause thus filled in, it becomes definite enough to be not only valid but also specifically enforceable. Cf. § 370, in which even technical and still uncertain terms, at least if collateral, are not permitted to defeat an otherwise merited remedy.

Even if it were thought that the Restatement is ambiguous or silent on the precise issue sub judice, Moolenaar would still recover. In that case we must make our

---

[5] 1 V.I.C. § 4 provides as follows:
The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

determination under the common law "as generally understood" in courts of other jurisdictions.[6] The rule which I have followed here is admittedly the minority view. See C.J.S., Landlord & Tenant § 56(3); Am.Jur.2d, Landlord & Tenant § 1165. But for the reasons which I gave in an earlier opinion, I think it is appropriate to give greater weight to recent decisions rather than weighing the authorities on a strictly numerical basis. Soto v. Bradshaw, Civ. No. 340/1971 (Div. of St. Croix 1972). Briefly, the common law is in a state of perpetual evolution and recent decisions will more accurately reflect the current understanding on an issue. For the issue at hand the minority view is nonetheless a widely followed one, see Am.Jur. and C.J.S. supra, and has been gaining adherents at a rate which indicates that the common law is moving in that direction. Compare, e.g., 30 A.L.R. 572 (1924) (few cases cited for minority view) with 6 A.L.R.2d 448, 454 (1949) (many such cases). And while, of course, not controlling here, the U.C.C. provisions on the Sale of Goods also illustrate the approach of the modern law, with its emphasis on reasonable commercial dealings and its rejection of technical requirements. 11A V.I.C. § 2–305 provides as follows:

(1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if
(a) nothing is said as to price; or
(b) the price is left to be agreed by the parties and they fail to agree . . . .

The comments to this section are also informative, and state in part as follows:

. . . This article rejects in these instances the formula that "an agreement to agree is unenforceable" . . . and rejects also defeating such agreements on the grounds of "indefiniteness." Instead this

---

[6] See note 5, supra.

Article recognizes the dominant intention of the parties to have the deal continue to be binding upon both.

For all the above reasons, I hold that the renewal clause is valid and enforceable.

## II

■ Given that the clause is enforceable, there remains the question of what rent Moolenaar should pay during the additional five years. As a general rule the "Reasonable rent" will be established at its "fair market value," which is to say, at the highest rent which a responsible bidder is apt to offer. This in turn suggests that the leasehold should be valued at its "highest and best use," for a lessee using the land in the most intensive and remunerative way possible will be able to outbid a person who would use it less efficiently. From this Co-Build asks us to conclude that the rent should be many times higher than it had been, since the 150 acres are now zoned 1-2 and may be subdivided for light industry.[7]

■ Nonetheless, I believe that Moolenaar is entitled to have the rent established at its fair value for the land as used for agricultural or animal husbandry purposes only. I conclude that this will most accurately reflect the intent of the original signatories to the lease. From the testimony presented at trial, I find that Mrs. Correa intended that Moolenaar be able to use the land for the purpose of raising sheep and goats during the renewal period, and that the rent be set at a fair value for his purpose. It is true that under this arrangement she will lose the possibility of a higher rent if circumstances changed to make a more profitable use practicable. But one purpose of a long-term lease, or of a renewal clause, is precisely to

---

[7] There are evidently a number of industrial uses which would be practicable even within the limited period of five years, although the shortness of this time would naturally reduce the rental value considerably.

insulate the parties from such changes in circumstances. In any event, I further find that Mrs. Correa was aware of such possibilities but determined that she was willing to see the land remain in an agricultural state for ten years, and so accepted a rent low enough to make this possible.

■ Co-Build then took title to the land subject to the provisions of the lease as outlined above. In other circumstances, a new owner who has purchased land subject to a lease might defeat the lower agricultural-use rental by arguing lack of notice. The lease states that the land may be used for any legal purpose, and from that a purchaser might reasonably conclude that the rent is to be set according to the "highest and best" such purpose. Nothing in the document indicates the contrary, and a bona fide purchaser charged with constructive notice of the recorded lease ordinarily should not be bound by additional parol understandings which would depart from the basic presumption of fair market valuation.

I believe, however, that Co-Build is fairly chargeable with actual notice of the circumstances here. At the time the company acquired the property in 1970, it was zoned R-10. This classification permitted agricultural use or residential in quarter-acre lots. The latter use is obviously impractical where, as here, the land can be held only for an additional five-year term. Thus, it was evident that the landlord and tenant had contemplated continuous agricultural or animal husbandry use. When Co-Build bought the land, it could well have deduced the nature of the underlying understanding in the lease agreement which encumbered the land. It was to this agreement that the company succeeded when it acquired the land. A subsequent change in the zoning laws should not be permitted to defeat the understanding. I find that the "renegotiation" clause was intended to deal only with fluctuations in real estate values and was not intended to permit a

357

response to the major contingency of rezoning. In any event, the clause had a built in "red flag" to put Co-Build on a duty of inquiry, since execution of the lease under the old zoning law would at least have left the intentions of the parties unclear. This duty would not have been burdensome; those who participated in the drafting of the original lease were available on St. Croix and in San Juan.

Since the parties have been unable to agree on a fair rental value for agricultural purposes, that figure will now be determined by the Court. The testimony at trial indicated that the present rental of $375 per month is, if anything, somewhat high for grazing use. Nonetheless I must take this figure as a freely bargained one, and hence fair. I also feel that I should make a rough adjustment for intervening inflation. A round figure of $400 per month would seem appropriate in the circumstances. Therefore, from the expert testimony given by Mr. Roebuck who has been engaged for many years in St. Croix in the sheep and goat husbandry business, and from the expert testimony of Mr. Hamilton who made an appraisal of the land on a rather novel but nonetheless convincing basis, I find that a reasonable rental would be $400 per month. With all due respect to Mr. Gaztambide, a most learned, respected and highly professional real property appraiser in Puerto Rico and the Virgin Islands, I must reject his appraisal but only for the reason that it was determined on the basis of the land's highest and most productive use—which, for the reasons explained herein—cannot be used in arriving at the reasonable rental for the use contemplated by the original parties to the lease agreement.

### III

 Co-Build next argues that Moolenaar failed to comply with certain terms of the lease, and is therefore disabled to exercise the renewal clause. The renewal op-

tion was conditioned upon the proviso that the tenant must not have been declared in default at any time during the term. Moolenaar admittedly failed to procure liability insurance, as Section 8 of the lease requires. I would nonetheless be reluctant to sustain this defense, since it is a transparent attempt to terminate Moolenaar's tenancy for other reasons. In any case, the law of the Virgin Islands does not permit forfeiture of property interests for violations of an insubstantial nature, at least without giving notice and an opportunity to cure. See Martin v. Domain, 6 V.I. 599 (Mun.Ct. 1968). Moreover, the lease contains a clause establishing the means by which notice would be given, indicating that the parties also intended to avoid forfeitures. The default here was cured immediately upon being called to Moolenaar's attention, and so I find that it has no legal effect in the present action.

A declaratory judgment will be entered in accordance with this Opinion.

### DECLARATORY JUDGMENT

For the reasons set forth in the Memorandum Opinion above, it is hereby adjudged and declared as follows:

1. The renewal clause is valid and enforceable.

2. The clause contemplates a rent for the additional term at a reasonable rate, as calculated by the value of the land for agricultural and animal husbandry purposes.

3. The fair rental in this case is $400 per month, retroactive to the end of the original five year term.