[Civ. No. 16909. Second Dist., Div. One. May 26, 1949.]

C. F. CHANEY, SR., et al., Respondents, v. EDITH M. T. SCHNEIDER, Appellant.

Charles A. Windham for Appellant.

Mize, Kroese, Larsh & Mize for Respondents.

DRAPEAU, J.—The parties to this action became involved in a controversy respecting their rights under the following provision in a lease of real property:

"At the expiration of this lease, Lessor agrees to give Lessee first refusal for an additional term of lease, at rentals and terms to be mutually agreed upon at that time, provided, the said Lessee shall faithfully comply with and perform all of the covenants conditions of this lease, and provided, further, that the Lessee shall give 30 days' notice to the Lessor before the expiration of said lease, to renew said lease."

The lease was for five years, with the extension agreement quoted.

The trial court adjudged that the lessee was entitled to an additional five years upon the same terms and conditions as the original lease but at an increased rental.

The original lease was assigned to two of the parties plaintiff in this action, but for brevity in this opinion these parties and the original lessee will be referred to as "lessee."

██ ██ Leases which left anything for future agreement of the parties were for a long time generally held to be void for uncertainty. The modern trend of decisions would seem to be in relaxation of the strictness of the rule, particularly when the amount of rental is left to future agreement. If there is in the writing a sufficient definite standard or method for the determination of the rental, and if the amount thereof is the only thing to be determined, courts of equity will hold that the parties agreed upon a reasonable rental for the extension, and will declare it if they do not agree. (30 A.L.R. 572; 68 A.L.R. 157; 166 A.L.R. 1237; *Streicher* v. *Heimburge,* 205 Cal. 675 [272 P. 290].)

The difficulty in enforcing the clause here under consideration lies in the fact that it provides for mutual agreement as to the terms as well as to the rental for the extended period of the lease.

In 51 Corpus Juris Secundum, section 56, page 597, it is stated: "A provision dealing with a renewal which by the use of the expression 'such terms as may be agreed upon' or by similar language, expressly makes the renewal dependent on future agreement of the parties, and is unenforceable." Similar statement is made in 32 American Jurisprudence, page 806.

When this lease was made the demised property was a bare lot. The premises were to be used for a trailer court. The lessee expended upwards of $10,000 in providing facilities for the use of trailers to be parked thereon, such as sewer, water, gas, light and other connections. The lease provided that upon its termination the lessor was to have the option

to purchase these facilities at 50 per cent of the salvage price and that if the lessor failed to exercise this option, the lessee could remove the improvements at his own cost and expense. These improvements being mostly placed in the ground, the salvage value thereof would be nominal and the cost to the lessee of removal would be prohibitive. Therefore, as a practical matter, upon the termination of the lease the lessee will lose the improvements or their value. When requested to agree upon the terms of the extension, the lessor refused to negotiate; "she just would not give an answer." Then she said she wanted the ground for herself, that she would not lease it, and then she mentioned that she would like to have her son run the park. It is this phase of the case which causes one to pause and consider whether or not as a matter of law the contract really should be held impossible of enforcement because of uncertainty.

It seems clear that it was the mutual intention of the parties to enter into a lease for five years, with an additional five years as part of the original agreement. Otherwise the lessee would never have expended $10,000 on the property in improvements which both parties knew could not be removed without the loss by the lessee of practically all of his investment.

Like all other branches of the law, the rules as to uncertainty in interpreting contracts are developing along with changing conditions in business and human affairs. Time was in California when a lease of real property providing for renewal upon rental to be agreed upon at the time of the renewal was void for uncertainty. (*Morrison* v. *Rossignol,* 5 Cal. 64.)

An excellent statement of the developing law in this respect is to be found in volume I, Williston on Contracts, revised edition (1936), section 45, page 131:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.

"On this ground clauses in leases containing renewal covenants leaving the renewal rental for the future agreement of the parties are in general held unenforceable for indefiniteness and uncertainty. On the contrary, some courts,

recognizing the practical business utility of such clauses in a lease, treat them as sufficiently definite by interpreting them as meaning a reasonable rental under the circumstances in case the parties cannot agree. A similar development is taking place with respect to sales of goods at prices to be later agreed upon in jurisdictions unhampered by the statutory requisite of the memorandum under the Statute of Frauds.''

California has adopted the rule of practical business utility in *Streicher* v. *Heimburge, supra* (205 Cal. 675). In that case a lease provided for renewal upon rental to be determined by arbitration. It was held that when arbitrators failed to agree the court would fix a reasonable rental.

This decision is based upon the theory that an agreement for the renewal of a lease may or may not be a condition precedent, depending upon the intent of the parties; and that this intent is to be determined from a view of the instrument as a whole, and a consideration of all of the facts in the case. If the agreement to renew was of the essence of the contract, and the terms of the lease or the rental to be paid thereunder were to be fixed by agreement, or in some other way, at the time of the extension of the lease, then the failure of the parties to so agree, or to fix particular terms does not avoid the lease. In such a case the courts will declare the terms upon which the parties fail to agree.

In *Joy* v. *St. Louis*, 138 U.S. 1 [11 S.Ct. 243, 34 L.Ed. 843], where a contract required a railroad to permit other railroads to use its trackage ''upon such reasonable regulations and terms as may be agreed upon,'' Mr. Justice Brewer, sitting in Circuit Court (29 F. 546, 557) commented: ''Does the omission of the details destroy the power of court, and practically nullify the force of the stipulation? or was it the intent of the parties simply to contract for a right, and leave with the court, in the absence of the agreement of parties, the full determination of all the details? I am aware of the rule that courts are not bound to relieve parties from mistakes or omissions, or to complete contracts which parties have left incomplete. But it is also true that ofttimes, at the making of a contract for a right, it may be impossible to determine details, or the changing situation of affairs may indicate that details also must be subject to modification, and therefore should not be definitely prescribed, and should be left to settlement by agreement or decree at the time the right is insisted upon. In such cases if the right is absolutely contracted for, and the details are of a nature which courts

may properly fix and settle, then, I take it, the courts should not hold the contract incomplete, but determine the right and also prescribe and settle the details.''

In the leading case of *Kaufmann* v. *Liggett*, 209 Pa. 87 [58 A. 129, 103 Am.St.Rep. 988, 994, 67 L.R.A. 353], a lessee placed valuable improvements upon real property under a lease which provided that renewals were granted at rentals to be fixed by arbitration. There was a failure to fix the rental as provided in the lease, the court decreed a renewal, fixed the rental and commented: ''The right of renewal constituted the substantial element in this portion of the agreement. It was that feature which, in great measure, justified the lessees in erecting upon the premises a large and costly building adapted to the needs of their business.''

So in this case here before us, the right of renewal constituted a substantial element in the agreement of the lessor and lessee, and inasmuch as the lessor failed and refused to agree upon the terms of the renewal or the rental, these terms were properly declared by the trial court.

Those covenants which run to the entire consideration of a contract are mutual and dependent, and where an instrument is susceptible of different interpretations the one adopted by the trial tribunal if it appears to be consistent with the intent of the parties and not the result of an abuse of discretion, will not be disturbed by an appellate court. (*Medico-Dental Building Co. of Los Angeles* v. *Horton & Converse*, 21 Cal.2d 411, 430 [132 P.2d 457].)

There is no contention but that the lessee lived up to all of the terms and conditions of the lease binding upon him, except that the lessor asserts that the notice given to her exercising the option for a renewal of the term was insufficient. We have examined the writing. Its language put the lessor on notice that the lessee desired to renew the lease, and at a subsequent conference between the parties the lessor was plainly advised of the election of the lessee. This was sufficient notice under the terms of the instrument.

Lessor complains that there was no evidence to support the finding of the trial court upon which the amount of the increased rental was fixed in the judgment. This finding was for the benefit of the lessor. While there is no direct evidence to support it, the record discloses sufficient facts from which the inference may be drawn.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.