314 So.2d 184 (1975)
Gordon B. CERTAIN, Jr., et al., Appellants,
v.
Cal KOVENS and Phyllis Kovens, Appellees.
No. 74-934.
District Court of Appeal of Florida, Third District.
May 20, 1975.
Rehearing Denied July 1, 1975.
*185 Bolles, Goodwin, Ryskamp & Welcher, Miami, for appellants.
Sibley, Giblin, Levenson & Ward, Shalle Stephen Fine, Miami, for appellees.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
This appeal is from a suit brought in the trial court by appellants against Cal Kovens and Phyllis Kovens, his wife (hereinafter referred to as the tenant), for cancellation of a 99 year lease, collection of rent and for a declaratory judgment. Appellants are the personal representatives of Gordon B. Certain (hereinafter referred to as the landlord). The dispute between the landlord and tenant arises from the following paragraph of the modified lease between the parties.
"3. RENTAL
First year the sum of Forty-Five Thousand Dollars ($45,000.00) net per annum, the receipt of which is hereby acknowledged;
Second, third and fourth years an annual net rental of Thirty-three Thousand Seven Hundred and Fifty Dollars ($33,750.00);
Fifth year an annual rental of Twenty-Five Thousand Seven Hundred Fifty Dollars ($25,750.00);
Sixth through the 99th year an annual net rental of Thirty Seven Thousand *186 Dollars ($37,000.00), subject, however, at the election of the Lessor herein, that the Lessor beginning with the fifth year of the term of this Lease and each ten year period thereafter, may have the privilege of an appraisal of the valuation of the demised land exclusive of any improvements thereon, and receive rental based upon five per cent but in no event shall the net rental be less than Thirty Seven Thousand Dollars ($37,000.00) per annum. Said appraisal shall be established by the joint inspection and appraisal of an appraiser representing the Lessor and an appraiser representing the Lessee. Should there be any disagreement said appraisers shall nominate a third one mutually satisfactory to them and his decision shall be final and binding on both parties. (The balance of said paragraph 3 of said Lease shall remain as originally written)."
The two questions raised by the pleadings are (1) Did the lessor waive his right to have an appraisal of the land and a recasting of the rent for the period beginning November 15, 1970, by failing to give timely notice to the tenant and by accepting rent after November 15, 1970, and (2) If there was no waiver of such right, is the property to be appraised on the present use of the land rather than the value of the land exclusive of any improvements thereon.
The landlord alleges and it is undisputed, that in 1956, the landlord entered into a lease agreement with Futurama Motel, Inc., which thereafter assigned such lease to Ruedd, Inc., a Florida corporation, the president of such corporation being Cal Kovens, one of the tenants herein. Ruedd, Inc., assigned such lease to Cal Kovens and Phyllis Kovens, his wife in 1969. After the assignment of the lease to Ruedd, Inc., the above modification of the lease was entered into by Ruedd, Inc., and the landlord.
On January 29, 1971, the landlord and tenant, together with their respective counsel and one Beth Thompson, a CPA, had conversations regarding appraisal of the property and recasting of the rent pursuant to the lease wherein it was acknowledged by the tenant that the landlord was seeking such action. Thereafter, and prior to February 17, 1972, it is uncontradicted that the landlord, the respective attorneys for the landlord and the tenant, discussed that Cal Kovens was physically unavailable as well as suffering from a serious illness and that the matter of recasting an appraisal would go forward. On February 17, 1972, the landlord's attorney, by letter, advised the tenant (Kovens' predecessor Ruedd, Inc.) and his (Kovens') attorney of the privilege of appraisal and recasting of the rent. The uncontradicted testimony of and correspondence between attorneys for the landlord and tenant impel us to the conclusion that the tenant had agreed that an appraisal of the property and recasting of the rent was appropriate and would be effective as of November 15, 1971.[1] The only dispute was the method *187 of appraisal and evaluation of the property pursuant to the modification agreement.[2] The first time that the tenant raised an objection to an appraisal of the property and the recasting of the rent under the modified lease was by way of an affirmative defense of waiver in their pleadings in this suit. The tenant Cal Kovens' contention that he is not bound by notice because he transferred the property to his then wife is without merit as it is uncontradicted that the landlord had no notice of such transfer. The tenant contends that in addition to waiver by landlord by untimely notice of the appraisal of the land and recasting of the rent, the landlord waived his right thereto because he accepted quarterly payments of rent after November 15, 1970. We cannot agree. The modification agreement is silent as to the period of time when the election could be exercised. Therefore, a reasonable time will apply. 7 Fla.Jur., Contracts, § 115. Furthermore, the lease modification was executed November 15, 1960, and recites that the rent for the fifth year was fixed. (There was no request for reappraisal at this time.) and the rent for the next ten year period (six through fifteen) thereafter could be set by new appraisal. Thus, in any event, the new rental, if any, would commence November 15, 1971, the date on which the parties agreed that such appraisal and recasting of rent would become effective.
Turning to the second question relative to the method of appraisal, we agree with the conclusion of the trial judge. The landlord contends that the property should be assessed at its highest and best use while ignoring and excluding improvement placed thereon. This may have been true had not the landlord and tenant together fixed the use of the property. The original lease contemplated a hotel or motel on the premises. After assignment from Futurama to Ruedd, such modification was executed which altered such use provision to that of a shopping center. Pursuant to this agreement, a shopping center was erected on the property, and the landlord and tenant entered into various agreements with two sublessees of the shopping center (Woolworth and Greater Miami Federal) that if there was a default in the 99 year lease between the landlord and tenant, the sublessee shall have a direct lease with the landlord. These agreements by the landlord fixed the use of the property until the year 2,000. Therefore, in determining the value of the land the appraisers should exclude the value of the improvements thereon but not exclude the present use of the property in the fixing of such valuation.
Affirmed in part and reversed in part.
NOTES
[1] Letter from tenant's attorney to landlord's attorney of January 22, 1973:

"The evaluation date under the terms of the lease is November 15, 1971. You said you would talk to Mr. Sol Bennett to find out if his opinion of value, as stated in his appraisal, would change if the evaluation date was November 15, 1971. You were then to advise me of Mr. Bennett's opinion.
In the interim, Mr. Quinlivan is re-working his figures, based on a valuation date of November 15, 1971.
After Mr. Quinlivan and Mr. Bennett have their basic information, these two gentlemen are to see if they can reach a joint conclusion regarding the following: (a) the value of the property as a shopping center site as of November 15, 1971; and (b) the value of the property under its present zoning classification as of November 15, 1971.
If these gentlemen can reach an agreement on those two valuations, we will then be in a position to see if the matter can be adjusted and settled between the parties or whether or not litigation must ensue in order to determine which method of evaluation is to be applied. If these two gentlemen cannot agree on valuations then, in all likelihood, we will have to carry out the formula under the lease, i.e., appoint a third appraiser and see if two out of three can reach a conclusion on the two methods of valuation.
Please advise when Mr. Bennett has re-done his figures and is in a position to discuss the matter with Mr. Quinlivan so that we can arrange an appointment."
[2] Ibid.