188 N.J. Super. 580 (1983)
458 A.2d 123
P.J.'S PANTRY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
MICHAEL PUSCHAK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 1983.
Decided February 4, 1983.
Before Judges BISCHOFF and GAULKIN.
*581 Lum, Biunno & Tompkins, attorneys for appellant (Roger P. Sauer on the brief).
Johnson & Johnson, attorneys for respondent (George W. Johnson, on the brief).
PER CURIAM.
Plaintiff, lessee under a commercial lease with defendant as lessor, brought this action to specifically enforce the renewal option provision of the agreement and for other relief. Defendant counterclaimed for possession of the premises and incidental relief. Following plenary hearing, the trial judge found the renewal option provision unenforceable and accordingly entered judgment granting possession to defendant. Plaintiff appeals.[1]
The relevant facts are essentially undisputed. In late 1975 defendant, a building contractor, purchased the premises, a commercial building situated on property adjoining land which he already owned. The prior owners had started preparations for a fast-food restaurant at the location; defendant intended to complete those plans and "construct and sell" the restaurant. His broker's advertisement elicited a response from Jerome Healey and Paul Ruth, who subsequently became the principals of plaintiff. Their negotiations eventuated in an agreement of sale dated November 7, 1975, under which defendant agreed to sell to Ruth[2] "all that certain fast-food service store now located at 1042 Tabor Road, Morris Plains, New Jersey" for $23,000, payable in installments as set forth in the agreement. At the March 29, 1976 closing of the transaction the parties executed a lease of "that certain fast-food service store located at 1042 Tabor Road, Morris Plains" for a term of five years commencing April 1, 1976 at a monthly rental of $350. The lease contained the following provisions:

*582 35th. At the end of the term of this lease, Tenant shall have a series of four successive options to renew for periods of five years, all at a rental reasonably to be agreed upon inclusive of payments for taxes.
36th. Tenant has the right of first refusal should Landlord decide to sell the property within the initial term of this lease as well as all subsequent terms.
37th. This lease agreement is being executed in conjunction with a contract for the sale of certain restaurant trade equipment of even date. It is understood and agreed that this lease and said contract are being entered into as a combined package and that failure of the Landlord to close as a result of its own fault under either the lease or the contract shall entitle the Tenant to return of all monies heretofore deposited and/or paid to the Landlord.
At trial the genesis of these provisions was described by Healey without contradiction:
Well, first of all, the reason that we paid such a substantial amount of money, and at the time it was for a nonexistent business, was that the terms of the lease were considered to be extremely favorable. And at that time Mr. Puschak, not having a tenant in the building, and interested and desirous of selling the premises for subsequent development as a restaurant, he extended what we thought was a good lease at this time for a lengthy period of time at what was then a very good rent. And for those reasons, we paid what was, we also considered, an excessive amount for a non-existing building. But being the lease was so favorable, we went ahead and committed ourselves to the terms of the contract and to the terms of the lease.
........
... because the lease was of such a lengthy nature that it would be ridiculous in 1976 to try and estimate what a fair rental would be 25, or 20 or 25 years hence. We thought, and at this point in time our relationship was amicable enough, that we would sit down and reasonably come to a fair rental.
........
We made it very clear to him that either contract without the lease was worthless and that they were going to be, or go hand in hand. Otherwise, either one was totally worthless.
Sometime in late 1979 and in contemplation of the sale of the business, plaintiff broached the question of the renewal option and rental with defendant. A variety of discussions ensued on that and other topics relating to the tenancy, but no agreement was reached either as to plaintiff's continued occupancy after March 31, 1981 or the rent to be paid therefor. After the present action was filed on March 27, 1981, the trial court entered a preliminary injunction permitting plaintiff to occupy the premises during the pendency of the proceedings, on the *583 "terms and provisions" of the lease but "upon the timely and continuous payment by the plaintiff to the defendant of the sum of $550 monthly rental...."
In his oral opinion rendered at the conclusion of the trial, the trial judge refused to specifically enforce the renewal option provisions, and accordingly granted possession to defendant, based upon his finding that
... we are dealing here with a situation where the parties have not reached a meaningful agreement with respect to the renewal of this lease. They have not, as it turns out, reached any agreement with respect to it at all and, therefore, there is no enforceable right to renew this lease.
The trial judge expressed the following rationale for his conclusion:
The basic conclusion I reached is that if I were to fix the rent for this property for the next five years, I could not do it in a readily objective way which would satisfy me for one that I'm being objective and I don't think I could do it in a readily objective way which would satisfy the parties and the world in general, that what we have is a kind of routine mechanical calculable fixing of rent.
I think the simple reality is that if I were to fix a rent for the next five years for this kind of a property, we would have a rent figure determined by Reginald Stanton, a personally figured out rent figure. We would have a highly personal decision that the rent should be a certain amount of dollars. That would flow from the fact that one is really dealing here with a nonobjective highly subjective area of valuation and it's the kind of valuation, if it is to be made at all in a rental situation, should be made by mutual agreement of the parties. I do not think it is appropriate for the Court to fix the rent under the circumstances of this case. I think that would be a misuse of judicial power by the Court and I also think that it would be an imposition upon the Court by the parties for them to expect the Court to make this arrangement for them.
We find this analysis unpersuasive. Our own review of the record on appeal and the relevant authorities satisfies us that the option clause here is enforceable and, in the absence of any agreement by the parties, the court may and should determine and impose a fair market rental for the extended lease term upon any exercise of the renewal option.
Critical in our view is that plaintiff's purchase of the restaurant business was based upon the understanding of both parties that a significant element of its value was in the leasehold. The renewal options, permitting extension of the original lease term by 20 years, were clearly intended to assure long-term stability *584 to the business and to assure plaintiff that its investment would not evaporate. The parties could not reasonably determine rentals over such an extended future term and therefore stipulated to future rentals "reasonably to be agreed upon inclusive of payment for taxes." In so doing the parties can fairly be said to have contemplated that the rental for each successive option term would be a "reasonable" rental, which in this setting can be equated with a "fair market" value of the occupancy. See Troy Hills v. Parsippany-Troy Hills Tp., 68 N.J. 604, 623-624 (1975); Moolenaar v. Co-Build Cos., Inc., 354 F. Supp. 980, 983-984 (D.V.I. 1973). Determination of such a "fair market" value is an undertaking which is not unknown to the courts or beyond their reasoned and objective analysis. See South Orange v. Alden Corp., 71 N.J. 362 (1976) (valuation of realty in condemnation proceedings); New Brunswick v. Tax Appeals Div., 39 N.J. 537, 544-545 (1963) (valuation of commercial property for tax assessment purposes); Lavene v. Lavene, 148 N.J. Super. 267 (App.Div. 1977), certif. den. 75 N.J. 28 (1977), on remand, 162 N.J. Super. 187 (Ch.Div. 1978) (valuation of closely held corporations). To conclude that the option provision here is unenforceable would be to deprive plaintiff quite unnecessarily of a significant part of the economic interest which the parties intended plaintiff to enjoy from the transaction. Such a forfeiture is surely to be avoided if reasonably possible. See New Jersey Bank v. Palladino, 77 N.J. 33, 46 (1978); William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 486-487 (Ch.Div. 1953), mod. 29 N.J. Super. 316 (App.Div. 1954).
As the trial judge pointed out, no reported New Jersey decision has addressed the specific issue raised here, and the case law from other jurisdictions falls into two conflicting lines of authority. See Annotation, "Validity and Enforceability of Provision for Renewal of Lease at Rental to be Fixed by Subsequent Agreement of Parties," 58 A.L.R.3d 500 (1974); Annotation, "Validity and Enforceability of Provision for Renewal of Lease at Rental not Determined," 166 A.L.R. 1237 (1947) (supplementing 68 A.L.R. 157 (1930) and 30 A.L.R. 572 (1924)). *585 Since authority thus exists to support both the enforceability and the unenforceability of the option, it would not be productive for us to canvass the cases comprehensively catalogued in the annotations. We need say only that substantial out-of-state authority, relying on the kinds of considerations we have expressed, supports the conclusion that the court may fix a "reasonable" rental where such a rental is called for under a lease renewal option clause. See, e.g., State Road Dept. v. Tampa Bay Theaters, Inc., 208 So.2d 485 (Fla.D.Ct.App. 1968), cert. den. 212 So.2d 869 (Fla.Sup.Ct. 1968); Kaybill Corp. Inc. v. Cherne, 24 Ill. App.3d 309, 320 N.E.2d 598 (App.Ct. 1974); Merman v. Surrey, 106 Misc.2d 941, 436 N.Y.S.2d 690 (Sup.Ct. 1981); Murray v. Odman, 1 Wash.2d 481, 96 P.2d 489 (Sup.Ct. 1939); Edwards v. Tobin, 132 Or. 38, 284 P. 562 (Sup.Ct. 1930). But see Beal v. Dill, 173 Kan. 879, 252 P.2d 931 (Sup.Ct. 1953). Indeed, persuasive authority exists to permit the court to fix reasonable rent even where the lease fails to articulate any guide or standard for determining rent during a future option period. See, e.g., Moolenaar, supra; Hall v. Weatherford, 32 Ariz. 370, 259 P. 282 (Sup.Ct. 1927); Chaney v. Schneider, 92 Cal. App.2d 88, 206 P.2d 669 (D.Ct.App. 1949); Moss v. Olson, 148 Ohio St. 625, 76 N.E.2d 875 (Sup.Ct. 1947); Playmate Club, Inc. v. Country Clubs, Inc., 62 Tenn. App. 383, 462 S.W.2d 890 (Ct.App. 1970). We not only regard the authority in support of our holding to be more persuasive than the contrary authority but also note that the conclusion we reach appears to be increasingly favored among the courts which have recently considered the issue. See, e.g., Moolenaar, supra, 354 F. Supp. at 983-984; Chaney v. Schneider, supra, 92 Cal. App.2d at 88-91, 206 P.2d at 669-671; Playmate Club, Inc., supra, 62 Tenn. App. at 385-388, 462 S.W.2d at 892-893.
Paragraphs 1, 2 and 3 of the judgment under review are accordingly reversed and the matter is remanded to the Chancery Division for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] The judgment also awarded damages of $2,566.19 to plaintiff on unrelated causes of action; the propriety of that award is not at issue on the appeal.
[2] Ruth thereafter assigned his interest under the contract to plaintiff.