David J. BERREY, d/b/a Hot Spot International Cafe, Appellant,

v.

Samuel J. JEFFCOAT and Phylene J. Jeffcoat, d/b/a Jeffcoat Rentals, Appellees.

No. S–2759.

Supreme Court of Alaska.

Jan. 5, 1990.

Christian N. Bataille, Law Offices of Charles E. Cole, Fairbanks, for appellant.

Brett M. Wood, Law Offices of Robert B. Downes, P.C., Fairbanks, for appellees.

Before: MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

In December of 1984 David Berrey leased commercial space in a Fairbanks office building for one year from Samuel and Phylene Jeffcoat (hereafter "Jeffcoat") for use as a restaurant. The lease stated:

> Tenant shall have the right to extend this lease. Should Tenant desire to exercise this right to extend, Tenant shall give Landlord written notice at least ninety (90) days before the expiration of the term. The extension shall be on the same terms and conditions except that the rent shall be renegotiated and determined according to existing conditions

and cost of living increases as of that time.

Payments of $1,400 were to be made monthly in advance.

Berrey exercised his option to renew the lease for 1986. He installed equipment and made certain improvements to the premises. On May 14, 1986 Berrey gave Jeffcoat written notice of heat and sewer problems and informed Jeffcoat that if the problems were not solved Berrey might (1) fix the defects and deduct the cost of repairs from rent, (2) sue for damages, or (3) move out and stop paying rent. Berrey apparently took none of those options, but did not pay the rent for June 1986. Berrey subsequently tendered, and Jeffcoat accepted, rent for July, August, September, and October 1986.

On August 29, 1986 Jeffcoat notified Berrey in writing that Berrey was "in default of the lease provision providing for timely monthly payments." Jeffcoat threatened to retake possession of the premises if Berrey did not bring the back payments current within fifteen days.

Berrey did not respond specifically to Jeffcoat's notice of default. However, on September 12, 1986 Berrey notified Jeffcoat in writing of his intent to renew the lease for an additional term of one year. Jeffcoat's attorney responded that Jeffcoat considered that the lease was in default because Berrey had not paid the June rent, but that if Berrey brought the rent current Jeffcoat would consider renewing the lease with a 10% increase.

Jeffcoat received no response to the proposal and on October 2, 1986 filed and served a complaint for forcible entry and detainer ("the FED action"), later amending it to add a claim for unpaid rent. On November 3, 1986 the district court dismissed both counts of the complaint because Jeffcoat had not given Berrey proper notice to quit the premises under AS 09.45.-100.

Berrey thereafter failed to pay rent for the months of November 1986 through March 1987. Jeffcoat filed another complaint for forcible entry and detainer on February 20, 1987, and amended the complaint to include a prayer for six months back rent.

The FED action for possession was tried to the district court on March 3, 1987. At the hearing, Berrey proposed depositing the amount of the back rent allegedly owed ($8,400) into the registry of the court.[1] The court's decision, which was orally announced on the day of the trial, was that because of the expiration of the lease and Berrey's failure to pay rent, Berrey had no right to possession of the premises. Berrey was required to vacate the premises by March 13, 1987. Formal findings of fact, conclusions of law and a partial judgment were entered March 16, 1987. Issues with regard to back rent and any setoffs and counterclaims by Berrey were reserved for determination under normal court scheduling.

Berrey subsequently filed an amended answer and a fourteen count counterclaim. The case was removed to superior court because, as a result of Berrey's counterclaim, the amount in controversy exceeded the jurisdictional limits of the district court. Jeffcoat moved for partial summary judgment in relation to the complaint for unpaid rent as well as to seven counts of Berry's counterclaim. The superior court granted Jeffcoat's motion for unpaid rent and dismissed the seven counts.

Following the order of the superior court granting his motion for summary judgment, Jeffcoat moved for the release of the $8,400.00 now deposited by Berrey into the court registry. The court released these funds to Jeffcoat on March 4, 1988. On March 31, 1988 the court entered a partial, final judgment in the principal sum of $8,400 plus interest, costs, and attorney's fees, making the express finding and direction required by Civil Rule 54(b). Berrey appeals.

I. DID THE SUPERIOR COURT ERR IN GRANTING SUMMARY JUDGMENT?

A. *Counts I, VII, VIII, XIII and the Judgment for Back Rent*

█ Count I of Berrey's counterclaim alleges that portions of his restaurant were

---

1. Berrey meanwhile placed funds in this amount with a third party.

periodically flooded by sewage coming from upper floors of the building. Jeffcoat was notified of the problem and requested to make repairs and did not do so. Count VII alleges that Jeffcoat failed to furnish adequate heat during the winter months. Count VIII alleges that because of inadequate heat, the water pipes located in the ceiling of the restaurant froze and burst in January of 1987, causing Berrey to close the restaurant and vacate the premises. Count XIII of the counterclaim alleges that Berrey was constructively evicted from the restaurant in January of 1987.

Berrey claims that the overflowing sewage, lack of heat, and burst water pipes each amounted to a breach of the lease which have resulted in damage to him. Further, as a result of these problems, he claims the right to an offset in rent and compensatory and punitive damages.

Jeffcoat claims that the lease explicitly made Berrey responsible for dealing with sewage back-ups, insufficient heating and burst pipes. He quotes the following language from the lease agreement to support his argument:

> It is understood and agreed that *the Landlord shall not be responsible ... for any repairs or damages other than normal wear and tear.*
>
> . . . .

2. Restatement (Second) of Property (Landlord and Tenant) § 5.5 states:
 > Obligation of Landlord to Keep Leased Property in Repair
 >
 > . . . .
 >
 > (2) Except to the extent the parties to a lease validly agree otherwise, the *landlord* is *obligated* to the tenant to *keep safe and in repair* the *areas* remaining *under his control* that are maintained for the use and benefit of his tenants.

 (Emphasis added). Restatement § 5.5 comment d elaborates on and illustrates this duty:
 > *Obligation to keep safe and in repair other areas in the control of the landlord and maintained for the use and benefit of the occupants.* The landlord is also under an obligation to keep in repair certain areas in multiple housing units and in commercial buildings which provide services to the tenants but which are in the landlord's control and to which access is denied to the tenants. Examples of these areas are furnace rooms, ventilator shafts, elevator shafts and spaces where pipes and electrical wiring are placed. Other examples

*Tenant is responsible for all* maintenance and upkeep of appliances and *general repairs of the premises.*

The sewage problem which plagued Berrey evidently originated on the floor above the leased premises. Similarly, the furnace which supplied heat to all of the units in the building from a central heating source was not on the premises Berrey leased.

The quoted clauses cannot reasonably be read to require Berrey to be responsible for off-premises repairs.[2] Nothing in the lease states or implies that Berrey is responsible for maintenance outside the restaurant. Thus, Jeffcoat is not exempted by the terms of the lease from responsibility for the alleged deficiencies relating to sewage, heat and frozen pipes.

■ Conditions caused by a landlord's failure to fulfill his obligation to make repairs which render leased property unsuitable for its contemplated use may give rise to damage and rent withholding remedies. Restatement (Second) of Property (Landlord and Tenant) § 5.4 (1977). Jeffcoat did not demonstrate an absence of genuine issues as to whether or not the premises were rendered unsuitable as a result of the alleged problems.[3] Thus, summary judgment was inappropriate on the counts of the counterclaim noted. Since Berrey may

> are closets for the storage of cleaning implements and tools used to clean and repair the building. The rule of this section imposes an obligation on the landlord to keep in repair these areas under his control so that the tenants will not be deprived of services they are entitled to receive.
> Illustrations:
> 6. L leases an office to T in an office building. Heat is supplied to the office from a furnace located in a room in the basement of the building. A fire in the room causes damage to the furnace. L is under an obligation to repair the furnace.
> 7. L leases an apartment to T in an apartment building. Water pipes in the wall of the building begin to leak. L is under an obligation to repair the leaky pipes.

3. Jeffcoat, as the moving party, had the burden of establishing by the submission of competent evidence that the averments of the counterclaim raised no material issue of fact. *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 450 (Alaska 1974).

be entitled to damages, it follows that a money judgment for back rent should not have been entered until the counterclaims had been resolved.

### B. *Count III*

 Count III alleges that Jeffcoat attempted to evict Berrey in retaliation for Berrey's notification to the City of Fairbanks Sanitarian of an incident of overflowing sewage. Berrey claims that Jeffcoat's retaliatory action breached implied covenants of good faith, fair dealing and quiet enjoyment. Jeffcoat claims that the eviction notice sent to Berrey was a mistake and was retracted within eight days. Therefore, Jeffcoat argues, the notice fails the test of substantiality required to demonstrate a breach of the covenant of quiet enjoyment.

Jeffcoat's attorney sent Berrey a notice of eviction dated April 17, 1986. However, this notice was retracted in writing on April 25, 1986. A breach of the covenant of quiet enjoyment "whether the covenant is expressed or implied, occurs if the lessee's enjoyment of the leased land is disturbed in a substantial manner either by the lessor or by the owner of a title paramount." W. Burby, *Handbook of the Law of Real Property,* § 62, at 148 (3d ed. 1965); *see also Coffin v. Fowler,* 483 P.2d 693 (Alaska 1971). Because the eviction notice was soon retracted and there is no indication that Berrey detrimentally relied on it, it seems apparent that the notice did not result in a substantial disturbance. Similarly, although there may be a question of fact concerning the motive for the eviction notice, it seems clear that the notice caused Berrey no damage. Summary judgment on Count III was therefore proper.

### C. *Count IX*

Count IX alleges that Jeffcoat, without Berrey's knowledge or permission, placed a "propane tank in a concrete enclosure" in the outdoor eating area of Berrey's leasehold, thereby obstructing the use of this area. Jeffcoat argues that Berrey's leasehold did not include an outdoor eating area but only restaurant space "located *in* the Jeffcoat building." (Emphasis added.)

The contract describes the entire leasehold area as follows: "Restaurant space located at 526 Fifth Avenue, located *in* the Jeffcoat Building, Fairbanks, Alaska." (Emphasis added.) Thus, the demised area is located *inside,* and not outside, of the building. There appears to be no genuine issue of material fact here. Summary judgment on Count IX was appropriate.

### D. *Count XIV*

In Count XIV Berrey alleges that Jeffcoat removed or destroyed property from the leased premises which the district court ordered, at the FED hearing, not to be disturbed or destroyed. Jeffcoat asserts that the court order is directed only to Berrey and that it is Berrey, not Jeffcoat, who was ordered not to remove or destroy property from the premises.

The judgment is directed exclusively to Berrey,[4] but the court at the FED trial made it clear that Jeffcoat was not to dispose of the property either. As no evidence was presented as to who owns the property in question, or whether it has been destroyed, summary judgment was improper on this count.[5]

## II. DID JEFFCOAT VALIDLY REJECT BERREY'S NOTICE OF LEASE RENEWAL?

The district court, following the forcible entry and detainer trial, concluded that

---

4. The judgment of the district court reads in pertinent part:

 2. The Defendant [Berrey], when vacating the premises, shall remove only those items of tangible personal property which are his property, and shall refrain from removing from the premises, until further order of this court, the seating counter and seating booths, consisting of tables and seats, situate on the premises; providing further, that the Defen-

dant in no event shall cause the removal or destruction of the artwork consisting of murals painted on the walls of the subject premises.

5. We recently had occasion to discuss some aspects of the problem of ownership of fixtures following termination of a lease in *Interior Energy v. Alaska Statebank,* 771 P.2d 1352, 1355–56 (Alaska 1989).

Berrey's notice of lease renewal of September 12, 1986 was ineffective to renew the lease for two reasons. First, the right to renew was impliedly conditioned on the lessee being current in rent payments and second, the parties did not agree to the rental term for the renewal period. Both of these conclusions are challenged on appeal.

■ With respect to the first conclusion, there is no doubt that the June payment was not made. Unresolved, however, is whether Berrey was justified in withholding the rent because of conditions which should have been corrected by Jeffcoat which made the property unsuitable for use as a restaurant. *See* Restatement (Second) of Property (Landlord and Tenant) §§ 5.4, 11.3. If Berrey's withholding was justified he was not in default when he attempted to renew. The trial court's findings do not address the question of justification.

■ With respect to the second point, that the lease was not renewed because the parties failed to agree to a rental amount, it is our view that the trial court committed an error of law.

> Courts are no longer reluctant to supply lease terms when parties who, at the time of contracting agreed to set or renegotiate particular terms in the future, are unable to reach agreement. This is particularly true when the amount of rental is the term left to future agreement.

*City of Kenai v. Ferguson*, 732 P.2d 184, 187 (Alaska 1987). Agreement on the rental amount was not a condition precedent to renewal. If the parties could not agree on rental terms, and could not agree on a method to resolve this question, the court could have resolved the issue for the parties. *Id.* (" '[T]he courts will declare the terms upon which the parties fail to agree.' ") (Citation and footnote omitted.)

Jeffcoat argues that the issue of Berrey's renewal of the lease is moot because by the time he vacated the premises he had failed to pay six months rent. There may be considerable force to this argument. On this record, however, we are unable to say that renewal of the lease is irrelevant to Berrey's damage claims arising from events which occurred in late 1986 and early 1987.

### III. DID THE SUPERIOR COURT IMPROPERLY RELEASE THE $8,400 HELD IN THE COURT REGISTRY?

Berrey's argument that the trial court erred in prematurely releasing the $8,400 deposited by him to Jeffcoat is moot. The money judgment on which the release was premised is now reversed. Jeffcoat therefore lacks present authority to retain the funds and he should return them to the registry of the superior court. *See generally Lundgren v. Gaudiane*, 782 P.2d 285 (Alaska 1989).

For the above reasons the judgment is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.